IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CENTRAL BUCKS SCHOOL DISTRICT | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 22-1128 |
| | : | |
| Q. M., M. M., T. M. | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                             November 29, 2022

Parents of a tenth grade student with Prader-Willi syndrome sought compensatory damages, compensatory education, and reimbursement for private education costs after several years attending primary and middle school in the school district. A hearing officer found the school district met its obligations under federal law for the student in eighth and ninth grade but not for tenth grade due to the student's evolving conditions. The hearing officer ordered the school district reimburse eighty-five percent of the parents' expenses for most but not all of tenth grade. The school district sued asking we vacate the hearing officer's findings as to tenth grade. The parents countered asking we vacate the hearing officer's denials for the eighth and ninth grades and seeking 100% reimbursement for, and additional portions of, the tenth grade year and for the ongoing eleventh-grade education. We found the school district did not provide a free, appropriate public education for the tenth grade after exhaustive review of the administrative record leading us to affirm the hearing officer's reasoning and award eighty-five percent reimbursement for tenth grade for the entire year. We also found the school district met its obligations for the eighth and ninth grades. The parties agreed to remand the eleventh grade issue after we denied summary judgment.

Parents now move for an award of $238,049.74 in attorneys' and expert's fees and costs. The school district agrees the parents are prevailing parties as to eighty-five percent of the tenth grade expense but not on their counterclaim seeking more for tenth grade and involving the other three years. The district objects to limited rates and hours and seeks at least a twenty-five percent discount because the parents did not succeed on all issues in the case; the parents succeeded in affirming the hearing officer with some additional recovery for months in the tenth grade not addressed in the administrative process. We sustain the district's objections in part including declining to award expert fees, reduce the overall fee award by twenty percent to account for parents not succeeding on their counterclaim to date. We grant parents' motion in part and award reduced attorneys' fees ($144,283.20) and the requested law firm expenses, private mediation expenses, and the expert's limited out-of-pocket expenses not challenged by the district. We cannot award the expert's fees as the parents do not offer evidence of reasonableness of the expert's rate and billed hours.

## I.  Background[1]

Q.M. is a seventeen-year-old student born with a rare genetic condition known as Prader-Willi syndrome causing him to exhibit food seeking behaviors with an inability to feel satisfied.[2] Prader-Willi syndrome is a spectrum disorder and the physicians and educational professionals confirm Q.M. falls somewhere along the more severe end of the continuum.[3] Even seeing or smelling food triggers Q.M.'s extreme anxiety. Prader-Will syndrome also affects Q.M.'s cognitive, physical, emotional, and behavioral functions.

Q.M. received special education in the Central Bucks School District from kindergarten through the end of his ninth-grade year.[4] The District offered special services to Q.M. through his individualized education program (IEP) including, among other things, a one-on-one aid to address

his need to maintain a food secure environment enabling him to make progress during the 2019-2020 and 2020-2021 school years.[5]

### *Parents hire attorney Judith Gran, her law firm, and expert Dr. Dana Henning.*

Q.M.'s Prader-Willi syndrome worsened during his ninth-grade year. He became more hyperphagic (food obsessed with an unrelenting appetite) typical of a person affected by Prader-Willi syndrome.[6] Q.M.'s Parents contacted Attorney Judith Gran, a special education attorney and partner in Reisman Carolla Gran & Zuba LLP, in early December 2020 during Q.M.'s ninth grade year.[7] Parents and the Gran firm signed an engagement letter on January 5, 2021.[8] The Parents and the Gran firm agreed the Gran firm would provide legal services in connection with Q.M.'s education. They also agreed the Gran firm would reduce its normal hourly charges and instead bill the parents: $456 per hour for Attorney Gran; $436 per hour for Attorney Catherine Merino Reisman; $395 per hour for Attorney Amelia Carolla; and $356 per hour for Attorney Sarah E. Zuba.[9]

Parents also hired Dr. Dana Henning during Q.M.'s ninth grade year to provide expertise in the education of students with significant disabilities and complex support needs.[10] Dr. Henning virtually observed (due to COVID-19 mitigation) Q.M. at the District school on April 22, 2021 and met Q.M. in-person for a "community observation" eight days later.[11]

### *Parents withdraw Q.M. from the District school.*

The District, through its February 2021 IEP to plan for Q.M.'s tenth grade year, offered to provide Q.M. many of the same services it provided to Q.M. through his previous IEPs despite Q.M.'s worsening Prader-Willi syndrome.[12] Attorney Gran reviewed the proposed IEP for Q.M.'s tenth grade year and attended the February 2021 IEP meetings with Parents and the District.[13]

The Parents and the District held meetings from February 2021 through May 2021 to review a revised IEP for Q.M.'s tenth-grade year. But they could not agree on an appropriate IEP for Q.M.'s tenth grade year. Attorney Gran sent the District a ten-day notice letter on May 3, 2021 detailing the Parents' plan to remove Q.M. from the District school and enroll him in a private residential placement.[14] She wrote "[Q.M.'s] present educational program . . . does not meet his educational needs" and explained "[h]e needs a program led by staff who have demonstrated expertise in dealing with all aspects of [Prader-Willi syndrome] and the intense physical and verbal outbursts that he frequently experiences[.]"[15] Parents pulled Q.M. from the District school on May 17, 2021, and enrolled him at the Latham Centers, a private year-round residential school specializing in Prader-Willi syndrome with a $280,000 annual tuition.[16] We understand Q.M. remains enrolled at the Latham Centers today.

### Attorneys Gran and Reisman represent Parents at the due process hearing.

Parents filed a due process administrative complaint about a week after enrolling Q.M. at the Latham Centers. The Parents alleged the District failed "to provide a free, appropriate public education to [Q.M.], a ninth-grade student in the District."[17] Attorney Gran and her partner Attorney Reisman represented Parents in the administrative proceeding.[18] Parents sought (1) compensatory education to the maximum extent allowed by law (for Q.M.'s eighth and ninth grade years); (2) injunctive and declaratory relief, reimbursement for services obtained, and reimbursement for tuition and costs of unilateral placement of Q.M. at Latham Centers (for Q.M's tenth grade year); (3) a finding the District's actions violated Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act and resulted in discriminatory denial of access to education; (4) reimbursement for attorneys' fees and other costs, including expert witness fees; and (5) other relief the hearing officer deemed appropriate and just.[19]

Hearing Officer Cathy A. Skidmore, Esquire presided over a four-day due process hearing beginning on October 12, 2021 and continuing on November 22, 2021, November 30, 2021, and December 8, 2021. The hearing totaled about twenty-three hours including breaks.[20] Hearing Officer Skidmore evaluated the credibility of testimony from ten witnesses including Q.M.'s parents, Q.M.'s endocrinologist, Dr. Henning, District personnel, and Latham Centers's personnel.[21] Parents introduced twenty-five exhibits and the District introduced thirty exhibits.[22] Dr. Henning also wrote a 163-page report on behalf of Parents.[23] She included information in her report from when she virtually observed Q.M. at the District school in April 2021 and again when she observed Q.M. in-person at the Latham Centers in July 2021.[24]

Hearing Officer Skidmore issued her decision on January 15, 2022 finding: (1) the District provided Q.M. a free appropriate public education for the 2019-2020 and 2020-2021 school years (eighth and ninth grade years); (2) the District failed to offer Q.M. a free appropriate public education for the 2021-2022 school year (tenth grade year); and (3) Parents are entitled to reimbursement of eighty-five percent of the tuition and related costs, including residential costs, for the 2021-2022 school year at the Latham Centers.[25] Hearing Officer Skidmore did not include the tuition costs for May through August 2021 but did not explain why. Hearing Officer Skidmore addressed Section 504 of the Rehabilitation Act and the Americans with Disabilities Act claims on the same grounds as the Individuals with Disabilities Education Act claims but she did not separately analyze those claims.[26]

Hearing Officer Skidmore found Dr. Henning's testimony convincing as to Q.M.'s medical condition but found her "lengthy report and opinion on the District's program" unconvincing because Dr. Henning did not base her report on information obtained from the District. Dr. Henning, according to Hearing Officer Skidmore, instead focused on a single remote

observation of Q.M. and appeared overly critical of an asserted lack of data and details in the District records including IEPs which Hearing Officer Skidmore found would not have been helpful.[27]

### The District and Parents sue each other.

The District sued Q.M. and his Parents a little over eight months ago seeking to overturn the portion of Hearing Officer Skidmore's decision ordering the District to reimburse Parents for eighty-five percent of tuition for the 2021-2022 school year and to find its proposed IEP provided Q.M. a free, appropriate public education for his tenth grade year.[28] Parents, again represented by Attorneys Gran and Reisman, countersued for 2,340 hours of compensatory education for Q.M.'s eighth and ninth grade years, additional tuition reimbursement for his tenth grade year, and attorneys' fees and costs and compensatory damages under Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, and the Individuals with Disabilities Education Act.[29] Parents also challenged the District's proposed IEP for Q.M.'s eleventh grade year (2022-2023) seeking an order compelling reimbursement for the ongoing costs at the Latham Center.[30]

We appointed the Honorable Thomas J. Rueter, Retired United States Magistrate Judge, as a settlement master on June 3, 2022.[31] The parties attended a private mediation. They could not resolve their claims.[32]

The parties cross-moved for judgment on the Administrative Record relating to school years 2019-2020 (eighth grade), 2020-2021 (ninth grade), and 2021-2022 (tenth grade), and for summary judgment as to their obligations relating to school year 2022-2023 (eleventh grade).[33] We granted in part and denied in part both parties' motions challenging the hearing officer's reasoned decision finding: (1) Parents failed to show a basis to disturb Hearing Officer Skidmore's detailed findings the District provided Q.M. a free appropriate public education for the 2019-2020 and 2020-

2021 school years; (2) the District failed to show a basis to disturb Hearing Officer Skidmore's detailed findings for the 2021-2022 school year and we affirmed the award of eighty-five percent of the tuition reimbursement with the addition of $68,956.32 for eighty-five percent of the May 2021 through August 2021 tuition not properly addressed in the administrative process; and (3) Parents are not entitled to compensatory damages under Section 504 of the Rehabilitation Act or the Americans with Disabilities Act.[34]

We granted Parents leave to move for attorneys' fees under the Individuals with Disabilities Education Act and expert costs under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act.[35] The parties agreed to remand issues relating to the 2022-2023 school year (eleventh grade) to the Hearing Officer's expertise.[36]

## II.    Analysis

Parents now move for their attorneys' fees and costs as the prevailing party under the Individuals with Disabilities Education Act and Section 504 of the Rehabilitation Act.[37] Attorney Sarah Zuba, a partner in the Gran firm, drafted the fee petition before us.[38] Parents seek $189,474.00 in attorney's fees, $1,114.20 in costs, $4,015.00 for their share of the private mediation fee, and $43,446.54 in expert fees and costs as follows:[39]

| | |
|---|---|
| Total attorneys' fees to present | $209,329.50 |
| Law firm expenses to present | $1,114.20 |
| Mediation fee paid by Parents | $4,015.00 |
| Expert fees and costs paid by Parents | $43,446.54 |
| Deduction for the 2022-2023 school year | -$16,728.50 |
| Deduction for IEP meetings | -$1,534.00 |
| Deduction for pre-engagement letter work | -$1,593.00 |
| TOTAL | $238,049.74 |

Congress, through the Individuals with Disabilities Education Act, provides parents of a child with a disability who is a "prevailing party" in an Individuals with Disabilities Education Act

case may, in our discretion, be awarded reasonable attorneys' fees and costs.[40] To "prevail" under the Act, similar to other statutes with "prevailing party" fee provisions, Parents must obtain a "judicially sanctioned" "material alteration of the legal relationship of the parties[.]"[41] Parents achieve a "material alteration" of the legal relationship of the parties when the relief they obtain is "in some way merit[s]-based."[42] Parents may be considered "prevailing parties" if they succeeded on "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."[43] If Parents succeeded on a significant issue, regardless of how substantial their success, they are entitled to prevailing party status.[44]

Congress requires we award attorneys' fees to prevailing parties "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished" and "[n]o bonus or multiplier may be used in calculating the fees awarded."[45] Our starting point to determine the appropriate hourly rate is the attorneys' usual billing rate for fee paying clients.[46] "[C]ounsels' hourly rates are not limited by rates specified in engagement letters; a fee agreement does not impose an automatic ceiling on an award of attorney fees" but "the fees stated therein are evidence of the prevailing rates at that time to be considered by the court."[47]

We consider the "prevailing market rates" in the relevant community for attorneys of "comparable skill, experience, and reputation."[48] Affidavits of non-party attorneys with personal knowledge of the hourly rates customarily charged in Pennsylvania special education cases and the fee schedule established by Community Legal Services, Inc. may provide evidence of the market rate.[49]

So we first determine the reasonable hourly rate. We then multiply this determined hourly rate by the reasonable hours expended to obtain the result. We define this calculation as the lodestar "presumed to be the reasonable fee."[50] Parents bear the burden to prove their request for attorneys'

fees is reasonable with evidence supporting both the reasonableness of requested rates and hours.[51] Attorneys cannot base their request for a claimed rate on their own affidavits but must submit evidence showing the requested rates fall within the norm of attorneys in the relevant community.[52]

The burden then shifts under the Act to the District to challenge (or object) to proposed rates and hours if inconsistent with the District's good faith understanding of the market.[53] We enjoy significant discretion to adjust the fees and costs downward when considering the District's objections, but we cannot find other objectionable areas and then decrease the award *sua sponte*.[54] We cannot decrease the Parents' fee award based on factors not raised at all by the District.[55]

### A.  The District concedes Parents are prevailing parties.

Parents contend they are entitled to attorneys' fees under the Individuals with Disabilities Education Act as prevailing parties in the underlying litigation.[56] The District does not dispute Parents are prevailing parties under the Act.[57]

Parents obtained a "material alteration of the legal relationship of the parties" when Hearing Officer Skidmore found, and we affirmed the District failed to provide Q.M. a free appropriate public education for the 2021-2022 school year and awarded Parents eighty-five percent of the tuition reimbursement for enrolling Q.M. at the Latham Centers. We also awarded parents an additional $68,956.32 for eighty-five percent of the May 2021 through August 2021 tuition not properly addressed in the administrative process. Parents are prevailing parties despite not obtaining compensatory education for the 2019-2020 and 2020-2021 school years because they still succeeded on an "significant issue" related to the 2021-2022 school year.[58]

### B.  We sustain the District's objections in part to reduce the lodestar.

The District objects to the size of the requested award. It argues we should reduce Parents' requested fee award because (1) the rate requested for Attorney Zuba is too high; (2) the hours

billed by Attorneys Gran, Reisman, and Zuba are excessive; (3) Parents are not entitled to reimbursement of fees for, or related, to their expert, Dr. Henning; (4) Parents lost two-thirds of their claims; and (5) Parents miscalculated the number of hours billed to the remanded counterclaim for the 2022-2023 school year.[59] The District asks we award a total of $35,084.30 of attorneys' fees and costs to Parents.[60]

### 1. Attorney Zuba's requested hourly rate is reasonable.

Parents seek $189,474.00 in attorneys' fees.[61] Parents request an hourly rate of $590 for Attorney Gran, $565 for Attorney Reisman, $460 for Attorney Zuba, and $100 for paralegals Connie Tracey and Tina Tilton.[62] The District argues the rate requested for Attorney Zuba is too high.[63] The District contends an hourly rate of $400 is appropriate for Attorney Zuba given her experience and years practicing education law. The District does not dispute the requested hourly rates of Attorneys Gran and Reisman or the hourly rates for the work performed by Paralegals Tracey and Tilton.

We are guided by decisions from two of our colleagues who studied these issues for years before we entered the analysis. For example, Judge Beetlestone in *LeJeune v. Khepera Charter School* found parents submitted enough evidence to support the reasonableness of their requested rates through declarations detailing the attorneys' education, credentials, and experience, along with declarations from other attorneys in the geographic area attesting to the prevailing attorneys' experience, skills, and the reasonableness of their rates.[64] Judge Beetlestone found it "telling[]" the rates charged by all three attorneys were below the rates outlined in the Community Legal Services' schedule for attorneys with comparable experience.[65] Judge Beetlestone considered the attorneys' "legal experience as a whole[,]" in finding the requested attorneys' rates reasonable.[66]

Judge Brody similarly found the requested rates reasonable in *Ida D. v. Rivera* after considering the attorneys' experience as a whole and affidavits from attorneys in the community attesting to the reasonableness of the rates.[67] Judge Brody also compared the requested rates with the hourly rate ranges provided in Community Legal Services of Philadelphia's fee schedule in determining their reasonableness.[68] She found the requested rates equal or lower to the fee schedule.

"Hourly rates that were set in previous court decisions for the same attorney and for the same type of work may constitute record evidence."[69] For example, Judge O'Neill in *School District of Philadelphia v. Kirsch* found an hourly rate of $385 for Attorney Zuba reasonable in 2017 when he considered "the tenure and experience [of Attorney Zuba] in the special education field and the record before [him] regarding rates awarded in this community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[70] An annual fee increase of four or five percent is generally reasonable.[71]

Attorney Zuba graduated Yale Law School in 2002.[72] Attorney Zuba has dedicated more than ninety percent of her practice over the last nine years to representing disabled individuals in cases related to special education and civil rights.[73] Parents' requested rate of $460 for Attorney Zuba is her usual billing rate for fee paying clients.[74]

But Attorney Zuba charged Parents a discounted rate of $356 per hour.[75] Does this change our analysis? We find no reason to do so today. Parents submitted declarations from two special education attorneys in Philadelphia to show Attorney Zuba's usual rate of $460 is comparable to the prevailing market rates: Attorney David J. Berney and Attorney Nicole Reimann. Attorney Berney, who has over twenty-five years' experience specializing in special education and employment discrimination law, is familiar with Attorney Zuba's biography as a special education

attorney.[76] He swears Attorney Zuba's rate of $460 is reasonable and comparable to the rates charged by attorneys of similar reputation and experience in the Philadelphia area.[77] Attorney Reimann, who has over thirty years of legal experience and concentrated on special education and civil rights matters for the past seven years, sets the billing rates at her firm, Batchis Nestle & Reimann, and swears Attorney Zuba hourly rate of $460 is reasonable.[78] She swears Attorney Zuba is among the most highly regarded and effective attorneys representing disabled children and families.[79] Attorney Zuba's requested rate of $460 per hour also falls on the very low end of the Community Legal Services' fee schedule which recognizes attorneys with sixteen to twenty years' experience commonly charge between $475 and $530 per hour.[80]

The District argues Attorney Zuba should be compensated at a rate of $400 per hour because she specialized in education law for "only" nine years.[81] The District points to Attorney Gran's declaration admitting Attorney Zuba joined the Gran firm in 2013 where she began dedicating ninety percent of her practice to special education and civil rights law.[82] The District does not challenge Attorney Zuba's success and skill as recognized and sworn by established members of the special education bar. It instead speculates (and possibly wrongly impugns) Attorney Zuba's skill in special education law today because of her varied experiences ten years ago and earlier. The District recognizes Attorney Zuba practiced with the Special Education Practice Group at Montgomery McCracken Walker & Rhoads LLP (where Attorney Zuba practiced complex litigation from 2003 to 2009). The District then reaches to diminish experience in "build[ing] her special education practice while engaging in commercial and bankruptcy litigation" at Brown Stone Nimeroff LLC from 2009 to 2013.[83] We are not persuaded by this type of argument especially when the District fails to offer an experienced attorney who may take a different view to show Attorney Zuba's requested rate is unreasonable.

We are persuaded by Judge Beetlestone's thorough fee analysis in *LeJeune* and Judge Brody's detailed analysis in *Ida D.* where they considered the attorneys' *experience as a whole*, affidavits from attorneys in the community attesting to the reasonableness of the requested rates, and the Community Legal Services' schedule for attorneys with comparable experience. We likewise find Attorney Zuba's rate of $465 reasonable considering her experience as an attorney as a whole, her requested rate falls on the very low end of the Community Legal Services' fee schedule, her requested rate matches her usual billing rates for fee paying clients, and Attorneys Berney's and Reimann's affidavits attesting to Attorney Zuba's experience, skills, and the reasonableness of her rates.

Attorney Zuba's requested rate is consistent with – and even slightly below – an annual fee increase of four or five percent based on her hourly rate of $385 in 2017 which Judge O'Neill found reasonable in *Kirsch*. Although Attorney Zuba charged Parents at a discounted rate of $356 per hour, fees awarded under the Individuals with Disabilities Education Act "shall be based on rates prevailing in the *community* in which the action or proceeding arose for the kind and quality of services furnished" and we are not limited by the amount in the engagement letter.[84] We find Attorney Zuba's requested rate of $465 is reasonable.[85]

### 2. We adjust time billed to the counterclaim and reduce time on the fee petition.

The District objects to hours billed by Attorneys Gran, Reisman, and Zuba as excessive. The District objects to the time Attorneys Gran and Reisman billed related to the administrative proceedings and argues Attorney Zuba billed an unreasonable amount of time to preparing the fee petition.[86] The District also argues Parents miscalculated the time they billed to the counterclaim related to the 2022-2023 school year.[87] The District does not dispute Parents' requested hours of paralegal work.

Parents support their counsels' detailed hours with declarations from attorneys practicing special education law in the Philadelphia area including Attorney Berney and Attorney Reimann. Parents also submitted declarations supporting the requested number of hours from Attorney Caryl Andrea Oberman who has over forty years of legal experience concentrating in special education law and Attorney Ilene Young who has over forty years of legal experience and dedicated approximately seventy-five percent of her practice to cases arising under the Act over the last ten years.[88] The District supports its objections to Parents' fee petition with a declaration from Attorney Timothy Gilsbach with approximately fourteen years of experience in education law.[89]

Attorneys Gran, Reisman, and Zuba billed approximately 379 hours including approximately 190 hours on the four day due process proceedings over almost seven weeks in front of Hearing Officer Skidmore, approximately 160 hours litigating in federal court, and 32 hours on the fee petition.[90] Parents voluntarily deducted 28.8 hours or $16,728.50 from their fee petition to exclude time billed litigating the counterclaim related to the 2022-2023 school year.[91] Parents deducted another $1,534.00 to exclude time billed attending the IEP meetings not recoverable under the Act.[92] Parents also deducted $1,593.00 (2.7 hours) from Attorney Gran's time billed for work performed before Parents signed the engagement letter.[93]

Parents submitted detailed timesheets for our review.[94] Parents seek the following fees, broken down by attorney and general categories of effort: [95]

|  | Administrative Proceeding | Federal Proceeding | Fee Petition | Total |
|---|---|---|---|---|
| **Attorney Gran** | **$99,179.00** ($590/hour x 168.1 hours) | **$62,658.00** ($590/hour x 106.2 hours) | **$1,416.00** ($590/hour x 2.4 hours) | **$163,253.00** (276.7 hours) |
| **Attorney Reisman** | **$3,559.50** ($565/hour x 6.3 hours) | **$6,723.50** ($565/hour x 11.9 hours) | **$1,130.00** ($565/hour x 2.0 hours) | **$11,413.00** (20.2 hours) |

| Attorney Zuba | N/A | N/A | $12,788.00 ($460/hour x 27.8 hours) | $12,788.00 (27.8 hours) |
|---|---|---|---|---|
| Paralegal Tracy | $520.00 ($100/hour x 5.2) | $500.00 ($100/hour x 5.0) | N/A | $1,020.00 (10.2 hours) |
| Paralegal Tilton | N/A | $1,000.00 ($100/hour x 10.0) | | $1,000.00 (10.0 hours) |
| | | | | TOTAL: $189,474.00 |

We may sustain one or more the District's objections and reduce the amount of attorneys' fees if we find: (1) Parents "unreasonably protracted the final resolution of the controversy;" (2) the amount of attorneys' fees "unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience;" (3) the amount of time billed and legal services furnished excessive considering the nature of the actions; *or* (4) Parents' counsel did not provide certain information in the notice of their due process complaint to the District.[96] Hours are generally not reasonable "if they are excessive, redundant, or otherwise unnecessary."[97] We should not decrease the hours included in the lodestar absent the District's specific objection.[98]

> **a. We overrule the District's objection to time billed for preparing and attending the four hearings sporadically scheduled over almost seven weeks.**

Parents seek reimbursement for 168.1 hours Attorney Gran billed during the four days of the administrative proceedings over approximately seven weeks for a total of $99,179.00, and 6.3 hours billed by Attorney Reisman for a total of $3,559.50.[99] The District objects to this billing. It argues Attorneys Gran and Reisman seek reimbursement for an unreasonable number of hours billed during the four hearings from October 12, 2021 to December 8, 2021.[100] We overrule the District's objection for three reasons.

First, the District argues Attorneys Reisman and Gran billed an excessive amount of time drafting the administrative due process complaint.[101] Attorney Reisman billed 5.9 hours drafting the administrative due process complaint and Attorney Gran billed about an hour revising it.[102] The District contends 3.0 hours is "more than enough time" for Attorneys Gran and Reisman to complete the drafting and review of a due process complaint.

In *I.W. v. School District of Philadelphia*, Judge Sitarski found 23.1 hours preparing to file a form due process complaint excessive, even considering the complexity of the student's case file.[103] Judge Sitarski found grounds for a one-third reduction in time billed and deducted 9.1 hours from the requested time and awarded 14 hours to this task.[104] Judge Schiller, in *Melissa G. v. School District of Philadelphia*, also considered objections to the time spent by parents' counsel drafting an initial due process letter and found 25.0 hours billed to reviewing the case file and drafting the due process letter excessive.[105] Judge Schiller reduced the fee award by 8.6 hours "in light of the nature of [the] case" – involving whether the district provided an appropriate IEP for a student with autism – for a total of 16.4 approved hours.[106]

We find after reviewing the timesheets and given the complexities of Q.M.'s case dealing with the behavioral and cognitive functions impacted by Prader-Willi syndrome, a complex and rare genetic disorder, a total of 6.9 hours billed preparing and reviewing the sixteen-page administrative due process complaint reasonable.[107]

Second, the District contends the 190 hours Parents' attorneys billed to the administrative proceeding as a whole is unreasonable and argues we should reduce Attorneys Gran's total time billed preparing for the administrative hearings from approximately 62.3 hours to 50.0 hours.[108] The due process hearing spanned approximately two months (October 12, 2021 through December 8, 2021), with twenty-five exhibits introduced by Parents and thirty exhibits introduced by the

District.[109] Ten witnesses testified with six on behalf of Parents and four District witnesses.[110] The administrative hearing totaled approximately twenty-three hours including breaks.[111] Attorney Gran billed approximately 62.3 hours to preparing for the several days of hearings.[112]

"Courts have generally recognized that the preparation time for a hearing should be considered relative to the length of the hearing itself."[113] In *Elizabeth S. v. School District of Philadelphia*, Judge Tucker deducted an experienced special education attorney's time billed preparing for a due process hearing by 9.5 hours.[114] Judge Tucker found a total of 40.0 hours reasonable preparation time for due process hearing lasting about 20.0 hours (2:1 ratio) especially in light of the attorney's experience.[115] Our Court of Appeals tells us we are not bound by the 2:1 ratio.[116] But if we do apply it, we should only apply it to hearing preparation time – not *all* attorney activities – and it is appropriate only where the lawyer is a "highly experienced attorney."[117]

In *I.W. v. School District of Philadelphia*, Judge Sitarski found 32.7 hours billed preparing for the due process hearing lasting about 28.1 hours reasonable for an experienced attorney, and 103.4 hours not excessive for an attorney not experienced in special education law.[118] Judge Sitarski considered "the duration of the hearings, the number of witnesses whom counsel examined, the number of exhibits produced, and the complexity of the myriad issues addressed [and] decline[d] to reduce the fee for the time spent preparing for the hearings."[119]

Attorney Gran is an experienced special education attorney who has practiced disability rights law for more than thirty-five years.[120] She billed about 62 hours – 13.2 hours more than the 2:1 ratio courts have found reasonable – on due process hearing preparation. Attorney Gran handled the due process hearing preparation almost entirely on her own.[121] We recognize the disadvantage to counsel facing hearings spread out over several weeks with the stop-and-start schedules often necessary in an administrative process. We would share the District's concern with

this much preparation time for a continuous four-day hearing like we try to ensure in federal court. Experienced counsel cannot remember all facts in their matters when the hearing is spread out sporadically over several weeks. They have other cases. The nature of the administrative process requires counsel for both sides to learn the file and then repeatedly re-learn the file (at least in part) each time the hearing officer decides to restart the evidence. We find, after reviewing Attorney Gran's time entries, the number of hours Attorney Gran billed preparing (and re-preparing four times) for the due process hearing over four days in approximately seven weeks is reasonable. We are persuaded by the number of witnesses Attorney Gran prepared and examined, the number of exhibits produced, the complexity of Prader-Willi syndrome, the lengthy timeframe involved – including IEPs for Q.M's eighth, ninth, and tenth grade school years, and the nature of sporadic hearings spread out over almost seven weeks.

Third, the District challenges the 65.2 hours Attorney Gran billed preparing for and drafting her written closing statement.[122] The District argues this is "an astounding" number and 20.0 hours is "more than enough reasonable time for this activity."[123] Attorney Gilsbach, in support of the District, swears Attorney Gran billed excessive time drafting a fourteen-page closing which included time reviewing 1,747 pages of transcripts and 965 pages of exhibits.[124]

We must independently assess the reasonableness of the time Attorney Gran billed drafting a due process hearing closing argument brief. We may consider the length and complexity of the hearing, the volume of exhibits in the record, and the amount of time expended by District counsel for the same task, keeping in mind Parents bear the burden of proof.[125] In *E.H. v. Wissahickon School District,* Judge Schiller considered the reasonableness of Attorney Gran's time billed preparing a closing argument brief in a due process hearing.[126] Judge Schiller ultimately held 82.1 hours writing a closing brief excessive when the hearing lasted four days, included fourteen

18

witnesses and fifty-nine exhibits especially given the district's counsel billed only 62.2 hours on its own post-hearing briefing.[127] Judge Schiller also found the time Attorney Gran billed reviewing the school district's exhibits excessive given her expertise and her additional time billed reviewing the exhibits before the hearing (8.8 hours).[128] Judge Schiller reduced Attorney Gran's time billed drafting her closing argument by 10.0 hours from 82.1 hours to 72.1 hours.[129]

Judge Sitarski, again in *I.W. v. School District of Philadelphia*, found the 115 hours parents' counsel billed preparing the post-hearing brief excessive, but rejected the school district's "conclusory argument that counsel for [parents] 'should have' been able to complete the post-hearing briefing in 40 hours when [the district's] counsel spent nearly double that."[130] Judge Sitarski found parents' counsel could have completed the task in 95 hours given the complexity and the case and the fact parents bore the burden of proof and thus deducted 20.6 hours for the post-hearing briefing.[131]

We cannot compare the time Attorney Gran billed preparing and drafting Parents' closing argument with the amount of time the District billed preparing and drafting its own closing argument, as Judge Schiller and Judge Sitarski could when considering the reasonableness of time billed drafting closing arguments, because the District does not provide us with this number. The District instead claims "a total of 20 hours is more than enough reasonable time for this activity."[132] We are unsure where the District finds support for this number given Attorney Gilsbach, in support of the District, states we should reduce the time billed preparing and drafting the closing argument by 28.4 hours for a total of 36.8 hours.[133] And Attorney Berney, in support of Parents' request for attorneys' fees, swears the total number of hours accrued in the administrative matter "is not unusual and may even be on the low side given the complexity of the case, the length of the hearings, and the number of witnesses involved."[134]

The District's speculation is not supported by its own declarant. We recognize our colleagues have criticized Attorney Gran's billing in other cases. But the District offers us no basis to do so today. We decline to reduce the number of hours Attorney Gran billed preparing and drafting Parents' closing argument considering Parents bore the burden of proof at the hearing, the thousands of pages of exhibits and testimony Attorney Gran reviewed, and the complexity of this case given the extraordinarily unique nature of Q.M.'s disability.

### b. We reduce the fees billed related to the counterclaim.

Parents do not today request fees related to their counterclaim seeking reimbursement for the 2022-2023 school year because the parties agreed to remand the 2022-2023 issues to Hearing Officer Skidmore.[135] But the District argues Parents still miscalculated the number of hours Parents billed to the remanded counterclaim based on their "deeply flawed" calculation.[136]

Attorney Gran swears "[i]t would be nearly impossible to discern how much time [Parents] spent on th[e] counterclaim in this action based on the billing records."[137] So the Parents' counsel adopted a unique approach of counting the number of words in the pleadings and briefs to "determine what proportion of the claims and defenses were consumed by the 2022-2023 counterclaim"[138] Parents concluded approximately eight percent of Parents' filings concerned the 2022-2023 counterclaim and determined 12.3 hours are attributable to the counterclaim.[139] Parents deducted an additional 16.5 hours for the time billed to work on the Joint Appendix because it pertained to the 2022-2023 school year.[140] Parents deducted a total of $16,728.50 (28.8 hours) for work on the 2022-2023 counterclaim and Joint Appendix as follows:[141]

- **Attorney Gran** – $15,163.00 (12.3 hours billed to drafting counterclaim; 13.4 hours billed to the Joint Appendix);

- **Attorney Reisman** – $1,525.50 (2.7 hours billed to the Joint Appendix); and

- **Paralegal Tracey** – $40.00 (0.4 hours billed to the Joint Appendix).

The District argues Parents' proposal to reduce the total number of hours by eight percent is "deeply flawed" and an "underestimate" of the time they billed on the counterclaim.[142] The District points out the majority of discovery in the federal action concerned the 2022-2023 counterclaim not previously considered by Hearing Officer Skidmore.[143] And Parents did not factor this into their calculation of time billed to the counterclaim.[144] For example, Attorney Gran billed approximately 4.0 hours drafting discovery requests, reading responses, conferencing about discovery, and reviewing a stipulation to supplement the record and 16.9 hours reviewing documents, data, and emails from Latham Centers in response to discovery requests.[145] Attorney Reisman billed .1 hours reviewing emails about discovery.[146]

We find Parents' estimate of the time they billed to the counterclaim is low because Parents fail to account for the time billed to discovery in this case which largely concerned the counterclaim. We deduct an additional 10 hours ($5,900) from Attorney Gran's time to account for her time billed to discovery related to the counterclaim. We find a competent basis to reduce Attorney Gran's billings by 22.3 for the hours Attorney Gran billed on the counterclaim ($13,157, which includes the additional 10 hours billed to discovery) along with the 16.5 hours deducted for the work on the Joint Appendix ($9,471.50) for a total reduction of $22,628.50.

### c.   We reduce Attorney Zuba's billing on the fee petition.

Parents request 27.8 hours or $12,788.00 for time billed by Attorney Zuba preparing the fee petition before us today.[147] Parents rely on the declarations of Attorneys Oberman and Young who swear the total number of hours billed on the fee petition is reasonable.[148] The District argues Parents fail to present convincing evidence to support the extensive amount of time Attorney Zuba billed preparing one pleading.[149] The District suggests we either strike Attorney Zuba's time billed drafting the fee petition or reduce her time to 15.0 hours.[150] The District offers no evidence the

amount requested for the fee petition is unreasonable. It instead concludes "15 hours is enough time for counsel to draft a fee petition, especially for a firm that specializes in special education law."[151]

"[T]ime spent on fee petition preparation is compensable" and must be reasonable to be recoverable, like time billed on any other aspect of litigation.[152] In *Joan P.B. v. Khepera Charter School District*, Judge Beetlestone found the time billed preparing the fee petition reasonable where parents requested a total of 23 hours and then voluntarily deducted 6 hours "in the interest of compromise."[153] Judge Beetlestone found 17 hours reasonable given the fee petition required researching complex issues of law – such as joint and several liability under the Individuals with Disabilities Education Act – and analyzing recent fee award cases.[154]

We reviewed Attorney Zuba's timesheet reflecting 27.8 hours billed preparing a twenty-page straightforward fee petition. We find this amount of billed time is excessive. Attorney Zuba, who has nineteen years' experience as an attorney and dedicated the last nine years to special education law, billed considerable time researching and analyzing relatively straightforward case law.[155] We cannot determine the precise amount of time Attorney Zuba's billed researching because she block-billed much of her time spent on the fee petition – including 7.6 hours on October 1, 2022 and 10.2 hours on October 2, 2022.[156] Unlike in *Joan P.B.*, this fee petition did not require Attorney Zuba to research complex issues of law like joint and several liability. It instead involved a straightforward fee analysis under the Act.

We find 17.8 hours researching to be excessive for such an experienced attorney for a straightforward fee petition. We reduce the amount of time Attorney Zuba billed to the fee petition by 7 hours for a total of 20.8 hours.

22

We now calculate a lodestar of $180,354.00 after reducing the amount of time Attorney Zuba billed preparing the fee petition and correcting the amount of time Attorney Gran billed to the counterclaim:

|  | Hourly Rate | Hours | Total |
|---|---|---|---|
| **Attorney Gran** | $590 | 266.7 hours | $157,353.00 |
| **Attorney Reisman** | $565 | 17.5 hours | $11,413.00 |
| **Attorney Zuba** | $460 | 20.8 hours | $9,568.00 |
| **Paralegal Tracy** | $100 | 10.2 hours | $1,020.00 |
| **Paralegal Tilton** | $100 | 10.0 hours | $1,000.00 |
| **TOTAL: $180,354.00** | | | |

### C.  We reduce the lodestar by twenty percent given Parents' partial success.

Our defined and reduced lodestar of $180,354.00 is presumed to be a reasonable fee.[157] The District asks we reduce the lodestar by thirty percent to adequately account for Parents' work on unsuccessful claims.[158] Attorney Gilsbach, in support of the District, contends "Parents did not achieve any success on their compensatory education claims for two school years, were unable to succeed on those claims on appeal, and also failed to carry the day on their claim for compensatory damages before this Court."[159] While Attorney Gilsbach acknowledges some of Parents' claims may have been intertwined, "most appear to have not been, so there should be a reduction of between 25% and 30% based upon the failure to succeed on many of the Parents claims resulting in a reduction of between $47,767 and $57,320."[160] Parents argue they are entitled to the full amount without reduction because the overarching issue common to all their claims involved whether the District provided Q.M. a free, appropriate public education.[161]

23

We may, in our discretion, adjust the fee award downward once lodestar is calculated.[162] Where a party "achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."[163] A downward departure may be warranted even where Parents "obtained significant relief" "if the relief, however significant, is limited in comparison to the scope of the litigation as a whole."[164] But when "the successful and unsuccessful claims involve a common core of facts, the lawsuit cannot be viewed as a series of discrete claims" and we should instead focus on the significance of the overall relief obtained.[165] We may accordingly reduce the lodestar, focusing on "the significance of the overall relief obtained by [Parents] in relation to the hours reasonably expended on the litigation."[166] "[H]ow to measure the degree of success is left to [our] discretion."[167] We must determine what degree of success has been achieved, and whether the lodestar is reasonable in the light of that degree of success.[168] We conduct a separate lodestar analysis for fees generated in litigating the fee petition and reduce the lodestar to reflect the Parents' partial success.[169]

We are persuaded by Judge Sitarski's reasoning in *I.W. v. School District of Philadelphia* where she found a thirty percent reduction in the lodestar appropriate "[w]hen comparing the relief sought to the relief obtained[.]"[170] The parents in *I.W.* obtained 1,300 hours of compensatory education, reimbursement for an independent educational evaluation, and an order requiring the school district to perform another evaluation and provide remedial, intensive programming for the student.[171] But parents did not obtain relief for extracurricular activities, compliance with a consent decree, or transition services.[172] Judge Sitarski recognized "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."[173] After considering the "interrelated nature of the claims," Judge Sitarski found it "impossible to determine with

24

mathematical precision the time expended on a claim-by-claim basis" and instead "focus[ed] on reducing the fees awarded to a reasonable amount in relation to the results obtained."[174]

Our facts are distinct from those presented in *Rayna P. v. Campus Community School*, where Judge McHugh found a downward departure unnecessary where parents "obtain[ed] nearly complete relief for their clients."[175] Judge McHugh recognized parents "lost only on the one minor claim" seeking compensatory summer school education.[176]

Prader-Willi syndrome is a unique and complex spectrum disorder. Symptoms associated with Prader-Willi syndrome tend to become progressively worse over time. So, we evaluated, and Hearing Officer Skidmore heard testimony, about Q.M.'s progression over time at the District school – not just his eighth and ninth grade years – since Q.M. faced increased behavioral challenges which gradually grew more problematic due to his worsening Prader-Willi syndrome. Although the parties did not offer us authority on how courts apply Congress' mandates in the Individuals with Disabilities Education Act to students with Prader-Willi syndrome, we found limited references to Prader-Willi syndrome highlighting the uniqueness of this case.[177] Congress enacted the Act to "protect[ ] the rights of disabled children by mandating that public educational institutions identify and effectively educate those children, or pay for their education elsewhere if they require specialized services that the public institution cannot provide."[178] Parents risked bringing this case under the Act after several years of the District providing Q.M. with an education. His condition changed as he grew into his teens. His counsel faced a history of apparently appropriate care and then rapid changes. Counsel faced a difficult and unique case with little judicial guidance. We do not want to discourage experienced counsel from bringing similar types of cases involving rare and complex disorders.

Q.M.'s Parents obtained significant relief including eighty-five percent tuition reimbursement for Q.M.'s tenth grade year (2021-2022 school year) at the Latham Centers for a total of $306,956.32, which includes the $238,000.00 awarded by Hearing Officer Skidmore and the additional $68,956.32 we awarded to account for eighty-five percent of the tuition from May 2021 through August 2021.[179] But, unlike Judge McHugh's findings in *Rayna P.*, we cannot characterize Parents' relief as "nearly complete" given the broad scope of the requested relief. Parents failed to persuade either Hearing Officer Skidmore or us in significant respects related to the 2019-2020 and 2020-2021 school years. We did not award Parents their requested 2,340 hours of compensatory education for the 2019-2020 or 2020-2021 school years. We also found no basis to award Parents compensatory damages under Section 504 of the Rehabilitation Act of 1973 or Title II of the Americans with Disabilities Act. They did not persuade us to award fees for the current eleventh grade year at this stage. But Parents and their counsel invested time in each of these years. When comparing the relief Parents sought to the relief they obtained, we cannot ignore the fact Parents obtained no relief on their claims for Q.M.'s eighth or ninth grade school years (2019-2020 and 2020-2021) in front of Hearing Officer Skidmore or before us. Hearing Officer Skidmore instead found, and we affirmed, the District provided Q.M. a free, appropriate public education during his eighth and ninth grade years.

Parents did succeed on one of the four school years to date – Q.M.'s tenth grade year. But not entirely. Hearing Officer Skidmore equitably reduced the amount of tuition awarded for Q.M.'s tenth grade year by fifteen percent ($42,000.00). And we found Parents failed to meet their burden to persuade us to award them the full amount of Q.M.'s tuition. But we found an award of eighty-five percent of tuition reimbursement warranted beginning on May 17, 2021 through August 2021 not addressed by Hearing Officer Skidmore.

Given the interrelated nature of Parents' successful and unsuccessful claims, we reduce the lodestar for the time billed until our Judgment by twenty percent. This reduction fairly reflects the degree of success Parents' counsel obtained in the due process hearing and the federal litigation without penalizing the ongoing efforts for the eleventh grade year to the full extent. Like Judge Sitarski, we aim to do "rough justice, not to achieve auditing perfection."[180] We also find appropriate a twenty percent reduction for fees accrued in preparing the fee petition based on our reducing the time Attorney Zuba billed preparing the fee petition, correcting the time billed to the remanded counterclaim, and our finding below the Parents offer no basis to find reasonable expert fees.

A twenty percent reduction in the lodestar is appropriate for a total of $144,283.20 in awarded fees.

### D.  We award Parents' requested legal expenses.

Parents request $1,114.20 for costs incurred for computerized legal research charges, copying, and overnight delivery costs.[181] The District does not object. We grant the costs.

### E.  We award Parents' requested mediation fees.

Parents request an additional $4,015.00 for their portion of the mediation fees charged by the Honorable Thomas J. Reuter during the parties' private mediation.[182] The District does not object. We grant these costs.

### F.  We decline to award Parents' expert fees but award expert costs under Section 504.

Parents seek $43,446.54 in expert fees and costs for the services of their special education expert, Dr. Dana Henning.[183] The District contends expert fees are not recoverable under the Individuals with Disabilities Education Act.[184] The District argues, if expert fees are recoverable, we should not award them because Dr. Henning did not contribute to Parents' success and we

should also reduce all attorneys' fees associated with Dr. Henning.[185] The District, in the alternative, asks we decline to award expert fees because Parents failed to prove Dr. Henning's requested rates or hours are reasonable.[186] Parents respond expert fees are warranted because they characterize Dr. Henning's contribution as "essential to establishing [ ] Q.M. needs a residential placement[.]"[187]

Congress in the Individuals with Disabilities Education Act does not allow for prevailing parties to recover the costs of expert fees.[188] But we may, in our discretion, award expert fees under Section 504 of the Rehabilitation Act of 1973.[189] "Denial of a [free, appropriate public education] because of a student's disability is unquestionably a violation of both the IDEA and Section 504."[190]

The District first argues Hearing Officer Skidmore found it did not violate Section 504.[191] The District is incorrect. Hearing Officer Skidmore held "[t]he obligation to provide [a free, appropriate public education] is substantively the same under Section 504 and the [Individuals with Disabilities Act]" and "the substantive standards for evaluating claims under Section 504 . . . are essentially identical" so she addressed the Section 504 and the Individuals with Disabilities Act claims "coextensive[ly][.]"[192] Hearing Officer Skidmore ultimately found the District denied Q.M. a free, appropriate public education because of his Prader-Willi syndrome for the 2021-2022 school year.[193] Parents are prevailing parties under Section 504 entitled to expert fees if they can show reasonable fees.

Parents seek full reimbursement under Section 504 for Dr. Henning's observations, evaluation, and testimony.[194] The District argues Parents fail to prove the reasonableness of Dr. Henning's expert fees.[195] We agree.

28

"As with the time claimed by counsel, *the prevailing party* bears the burden of justifying the time claimed by its expert witnesses."[196] Parents must provide some evidence of the reasonableness of Dr. Henning's hourly rate and the time she billed to this matter.[197] We have a separate "obligation to conduct a thorough and searching review of the time claimed by a prevailing party's experts."[198] We are guided by Judge Tucker in *E.C. v. School District of Philadelphia* where she did not award expert fees for one expert where parents failed to provide the expert's hourly rates because parents "failed to satisfy their burden of showing [ ] his fee is reasonable."[199] For another expert, Judge Tucker also declined to award expert fees where the parents provided the hourly rate, but offered no evidence addressing the reasonableness of the rate or the hours expended.[200]

Parents retained Dr. Henning as an expert in special education and functional and life skills in the spring of 2021.[201] Dr. Henning observed Q.M. at the District school, in the community, and at the Latham Centers.[202] She wrote an extensive report totaling 162 pages.[203] Dr. Henning also testified at the due process hearing for five and a half hours with three preparation sessions.[204]

Officer Skidmore found Dr. Henning's testimony convincing as to Q.M.'s medical condition but found her "lengthy report and opinion on the District's program" unconvincing because Dr. Henning did not base her opinion on information obtained from the District; she instead focused on a single remote observation of Q.M. and appeared overly critical of an asserted lack of data and details in the District records.[205]

Dr. Henning's billed 153.90 hours working on this case and billed Parents $43,446.54.[206] Parents do not adduce evidence in support of the reasonableness of Dr. Henning's hours or rates. Parents instead only provide Dr. Henning's invoice which includes vague time entries including 90 hours for "record review, data analysis, [and] report writing[.]"[207] Dr. Henning charged –

without explanation – $250 an hour from April 2021 until August 2021 and then beginning in October 2021 through December 2021 charged $350 an hour.[208] Dr. Henning's invoice also includes time for lodging and food while she conducted her in-person observation of Q.M. at the Latham Centers in July 2021.[209]

We will not award Parents' expert fees because they failed to satisfy their burden of showing Dr. Henning's hours or rates billed on this case are reasonable.

Parents also request costs of $765.99 for Dr. Henning's two-night stay at a hotel and four meals incurred while conducting her in-person observation of Q.M. at the Latham Centers in July 2021.[210] The District does not object or offer grounds why these costs should not be reimbursed.[211] We will award these costs incurred by Dr. Henning.

### III.   Conclusion

Parents are prevailing parties entitled to reasonable attorneys' fees under the Individuals with Disabilities Education Act. But we sustain the District's objections in part and reduce the defined loadstar by twenty percent. Parents are not entitled to expert fees for Dr. Henning because they failed to satisfy their burden of showing Dr. Henning's hours or rates are reasonable.

We award fees:

| Attorney | Hourly rate | Total hours sought | Adjustment | Adjusted hours | Total fees awarded |
|---|---|---|---|---|---|
| Attorney Gran | $590 | 276.7 | (10.0) | 266.7 | $157,353.00 |
| Attorney Reisman | $565 | 20.2 | 0 | 20.2 | $11,413.00 |
| Attorney Zuba | $460 | 27.8 | (7.0) | 20.8 | $9,568.00 |
| Paralegal Tracy | $100 | 10.2 | 0 | 10.2 | $1,020.00 |
| Paralegal Tilton | $100 | 10 | 0 | 10 | $1,000.00 |
| | | | | | Total: $180,354.00 |
| | | | | | **Total after 20% reduction: $144,283.20** |

We award costs:

| Cost Type | Costs sought | Adjustments | Total costs awarded |
|---|---|---|---|
| Law firm expenses | $1,114.20 | 0 | $1,114.20 |
| Mediation fee paid by Parents | $4,015.00 | 0 | $4,015.00 |
| Expert fees and costs for Dr. Dana Henning | $43,446.54 | ($42,680.55) | $765.99 |
| | | | **Total: $5,895.19** |

---

[1] We offer background facts as context for Parents' motion as largely derived from the fulsome facts detailed in our September 12, 2022 Memorandum explaining the basis for our Order granting in part and denying in part the parties' cross-Motions for judgment on the Administrative Record relating to school years 2019-2020, 2020-2021, and 2021-2022, and cross-Motions for summary

judgment relating to school year 2022-2023. *See* ECF Doc. No. 38. The parties submitted the supplemental administrative record as the Joint Appendix (ECF Doc. Nos. 24-3, 24-4). References to the Joint Appendix ("J.A.") shall be by Bates number, for example, "J.A. 1."

[2] ECF Doc. No. 24-2 ¶ 1; J.A. 674 at ¶ 2.

[3] ECF Doc. No. 24-2 ¶ 3.

[4] ECF Doc. No. 24-2 ¶ 2.

[5] ECF Doc. No. 10-10 at 33–97, 293–371.

[6] ECF Doc. No. 10-7 at 119–22.

[7] ECF Doc. No. 46-4 at 1; ECF Doc. No. 51-1 ¶ 5.

[8] ECF Doc. No. 51-1 ¶ 6.

[9] ECF Doc. No. 54 at 9. The Gran firm charged Parents discounted rates. The Gran firm usually billed at higher rates in 2021: Attorney Gran ($570 per hour); Attorney Reisman ($545 per hour); Attorney Carolla ($500 per hour); and Attorney Zuba ($445 per hour). ECF Doc. No. 54 ¶ 7. The Gran firm raised its billing rates effective January 1, 2022 as follows: Attorney Gran ($590 per hour); Attorney Reisman ($565 per hour); Attorney Carolla ($520 per hour); and Attorney Zuba ($460 per hour). *Id.* ¶ 8.

[10] ECF Doc. No. 46-11.

[11] *Id.*

[12] ECF Doc. No. 10-10 at 750–872.

[13] ECF Doc. No. 46-4 at 2–3.

[14] ECF Doc. No. 10-10 at 945–46.

[15] *Id.*

[16] ECF Doc. No. 25-1 ¶ 95.

[17] ECF Doc. No. 10-12.

[18] ECF Doc. No. 46-1 at 16.

[19] ECF Doc. No. 10-12.

[20] ECF Doc. No. 47 at 10.

[21] ECF Doc. Nos. 10-6, 10-7, 10-8, 10-9.

[22] ECF Doc. No. 46-1 at 11.

[23] ECF Doc. No. 10-11 at 450–612.

[24] *Id*.; ECF Doc. No. 46-11.

[25] ECF Doc. No. 10-3.

[26] *Id*. at 27.

[27] ECF Doc. No. 10-3 at 22–23. Hearing Officer Skidmore also reasoned her decision must be based on the record as a whole and not on a single witness's focus on specific information. *Id.*

[28] ECF Doc. No. 1.

[29] ECF Doc. No. 7.

[30] *Id*.

[31] ECF Doc. No. 17.

[32] ECF Doc. No. 46-10.

[33] ECF Doc. Nos. 24, 25.

[34] ECF Doc. Nos. 38, 39.

[35] ECF Doc. Nos. 38, 39.

[36] ECF Doc. No. 43.

[37] ECF Doc. No. 46.

[38] ECF Doc. No. 46-6 at 1–2.

[39] ECF Doc. No. 46-1 at 18; ECF Doc. No. 51-1.

[40] 20 U.S.C. § 1415(i)(3)(B) ("In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability[.]").

[41] *M.R. v. Ridley Sch. Dist*., 868 F.3d 218, 224 (3d Cir. 2017) (internal citations omitted).

[42] *Id.* (quoting *Raab v. City of Ocean City*, 833 F.3d 286, 293 (3d Cir. 2016)).

[43] *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) (emphasis added) (quotation marks and citation omitted).

[44] *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 856 (3d Cir. 2006), *as amended* (Apr. 27, 2006), *as amended* (May 16, 2006).

[45] 20 U.S.C. § 1415(i)(3)(C).

[46] *LeJeune v. Khepera Charter Sch.*, 420 F. Supp. 3d 331, 340 (E.D. Pa. 2019) (internal quotations and citations omitted).

[47] *M.M. v. Sch. Dist. of Philadelphia*, 142 F. Supp. 3d 396, 405 (E.D. Pa. 2015).

[48] *LeJeune*, 420 F. Supp. 3d at 340 (internal quotations and citations omitted) (quoting *Pennsylvania Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 231 (3d Cir. 1998)); *see also Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

[49] *LeJeune*, 420 F. Supp. 3d at 340 (internal quotations and citations omitted)

[50] *Id.* at 339 (quoting *Rode*, 892 F.2d at 1183).

[51] *Id.* (internal citations omitted).

[52] *I.W. v. Sch. Dist. of Philadelphia*, No. 14-3141, 2016 WL 147148, at *5 (E.D. Pa. Jan. 13, 2016) (citing *Rode*, 892 F.2d at 1183).

[53] *LeJeune*, 420 F. Supp. 3d at 339 (internal citations omitted).

[54] *I.W.*, 2016 WL 147148, at *3 (internal citations omitted).

[55] *E.C. v. Sch. Dist. of Philadelphia*, 91 F. Supp. 3d 598, 603 (E.D. Pa. 2015), *aff'd sub nom. E.C. v. Philadelphia Sch. Dist.*, 644 F. App'x 154 (3d Cir. 2016) (internal citations omitted).

[56] ECF Doc. No. 46-1 at 3.

[57] ECF Doc. No. 47.

[58] *See Hensley,* 461 U.S. at 433.

[59] ECF Doc. No. 47.

[60] ECF Doc. No 47-2.

[61] ECF Doc. No. 46-1 at 18; ECF Doc. No. 51-1.

[62] ECF Doc. No. 46-1 at 4.

[63] ECF Doc. No. 47 at 4–7.

[64] *LeJeune,* 420 F. Supp. 3d at 340.

[65] *Id.*

[66] *Id.* at 341.

34

---

[67] *Ida D. v. Rivera*, No. 17-5272, 2019 WL 2615481, at *8 (E.D. Pa. June 26, 2019).

[68] *Id.*

[69] *E.H. v. Wissahickon Sch. Dist.*, No. 19-5445, 2020 WL 6286709, at *5 (E.D. Pa. Oct. 27, 2020).

[70] *Sch. Dist. of Philadelphia v. Kirsch*, No. 14-4910, 2017 WL 131808, at *6 (E.D. Pa. Jan. 11, 2017), *aff'd*, 722 F. App'x 215 (3d Cir. 2018).

[71] *E.H.*, 2020 WL 6286709, at *5.

[72] ECF Doc. No. 46-2 ¶ 16.

[73] *Id.* ¶ 20.

[74] *Id.* ¶ 25.

[75] ECF Doc. No. 54 at 9.

[76] ECF Doc. No. 46-12 ¶¶ 1–5, 42–43.

[77] *Id.* ¶ 43.

[78] ECF Doc. No. 46-13 ¶¶ 5, 11, 20.

[79] *Id.* ¶ 16.

[80] ECF Doc. No. 46-1 at 6–7; see also *Attorney Fees*, COMMUNITY LEGAL SERVICES OF PHILADELPHIA (last accessed Nov. 29, 2022), https://clsphila.org/about-community-legal-services/attorney-fees/.

[81] ECF Doc. No. 47 at 4–7.

[82] ECF Doc. No. 46-2 ¶¶ 19–20.

[83] *Id.* ¶¶ 19–20; ECF Doc. No. 47 at 6–7.

[84] 20 U.S.C. § 1415(i)(3)(C) (emphasis added); *M.M.*, 142 F. Supp. at 405.

[85] Although Attorney Zuba charged Parents at a discounted rate of $356 per hour, fees awarded under the Individuals with Disabilities Education Act "shall be based on rates prevailing in the *community* in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C) (emphasis added); se*e also Gresko v. Pemberton Twp. Bd. of Educ.*, No. 119-00638, 2020 WL 6042317, at *8 (D.N.J. Oct. 13, 2020) ("[T]he Court's focus at this stage is on the 'community market rate' rather than the actual fees paid by the clients[.]").

[86] ECF Doc. No. 47.

[87] *Id.*

35

[88] ECF Doc. Nos. 46-12, 46-13, 46-14, and 46-15.

[89] ECF Doc. No. 47-1. Attorney Gilsbach raises issues with Parents' fee petition not addressed in the Districts' Response to Parent's motion for attorneys' fees. He is not the District's counsel. We only address issues raised by the District to meet its burden to make "specific objections" to the proposed hours and rates. *See I.W.*, 2016 WL 147148, at *3.

[90] ECF Doc. No. 46-1 at 11, 13.

[91] *Id*. at 14–15.

[92] *Id*. at 16; *see* 34 C.F.R. § 300.517(c)(2)(ii) ("Attorneys' fees may not be awarded relating to any meeting of the IEP Team unless the meeting is convened as a result of an administrative proceeding or judicial action, or at the discretion of the State[.]"). The District argues we should deduct an additional 1.7 hours for Attorney Gran's attendance at a resolution meeting on June 7, 2021, which is prohibited under the Act. *See* ECF Doc. No. 47 at 19; *see also* 34 C.F.R. § 300.517(c)(2)(iii). It appears after reviewing Attorney Gran's timesheet, Attorney Gran did not bill 1.7 hours to the resolution meeting, but instead billed 1.0 hours to a follow-up call after the meeting, and 0.7 hours reviewing insurance benefits and correspondence from the Lenape Valley Foundation. *See* ECF Doc. No. 46-4 at 5. We will not deduct any additional time.

[93] ECF Doc. No. 51-1.

[94] ECF Doc. Nos. 46-4, 46-5, 46-6, 46-7, 46-8.

[95] ECF Doc. No. 46-1 at 16–17; ECF Doc. No. 51-1 ¶¶ 7–11.

[96] 20 U.S.C. § 1415(i)(3)(F).

[97] *Rode*, 892 F.2d at 1183 (internal citation omitted).

[98] *I.W.*, 2016 WL 147148, at *12 n.14 (citing *Rode*, 892 F.2d at 1183).

[99] ECF Doc. No. 46-1 at 16; ECF Doc. No. 51-1. Parents' Memorandum in support of its motion for fees seeks 170.8 hours for Attorney Gran's time billed to the administrative proceedings which totals $100,772.00. But Parents have voluntarily deducted 2.7 hours ($1,593) from this to exclude time billed before Parents executed the engagement letter. *See* ECF Doc. No. 51.

[100] ECF Doc. No. 47 at 9–10.

[101] *Id*. at 9.

[102] ECF Doc. No. 46-5 at 1; ECF Doc. No. 46-4 at 4–5.

[103] *I.W.,* 2016 WL 147148, at *13.

[104] *Id.*

[105] *Melissa G. v. Sch. Dist. of Philadelphia*, No. 06-5527, 2008 WL 160613, at *4 (E.D. Pa. Jan. 14, 2008).

[106] *Id.*

[107] *See I.W.,* 2016 WL 147148, at *13.

[108] ECF Doc. No. 47 at 10; ECF Doc. No. 47-1 at 3–4. The District also appears to argue we should reduce the time billed by Attorney Gran preparing for the due process hearing from 190 hours to 50 hours. *See* ECF Doc. No. 47 at 19. Attorney Gran, however, billed approximately 170 hours total on the due process proceedings. She did not bill the full 170 hours preparing for the hearing; she also billed time drafting the ten-day notice letter, attending the hearing, and drafting her closing argument. Attorney Gran billed approximately 62.3 hours preparing for the due process hearing.

[109] ECF Doc. No. 46-1 at 11.

[110] *Id.*

[111] ECF Doc. No. 47 at 10.

[112] ECF Doc. No. 46-4.

[113] *Elizabeth S. v. Sch. Dist. of Philadelphia*, No. 11-1570, 2012 WL 2469547, at *3 (E.D. Pa. June 28, 2012)

[114] *Id.*

[115] *Id.*

[116] *E.C. v. Philadelphia Sch. Dist.*, 644 F. App'x 154, 155 (3d Cir. 2016).

[117] *Id.*

[118] *I.W.*, 2016 WL 147148, at *15.

[119] *Id.* at *16

[120] ECF Doc. No. 46-2 ¶ 5.

[121] Attorney Reisman played a limited role during the administrative proceeding mainly limited to drafting the due process complaint. *See* ECF Doc. No. 46-5 at 1–5.

[122] ECF Doc. No. 47 at 10.

[123] *Id.*

[124] ECF Doc. No. 47-1 at 4.

[125] *E.H.,* 2020 WL 6286709, at *6.

[126] *Id.*

[127] *Id.* at *6–7.

[128] *Id.*

[129] *Id.*

[130] *I.W.*, 2016 WL 147148, at *16.

[131] *Id.*

[132] ECF Doc. No. 47 at 10.

[133] ECF Doc. No. 47-1 at 4.

[134] ECF Doc. No. 46-12 ¶ 44.

[135] ECF Doc. No. 46-1 at 15–16.

[136] ECF Doc. No. 47 at 17–18.

[137] ECF Doc. No. 46-2 ¶ 30.

[138] ECF Doc. No. 46-1 at 15; ECF Doc. No. 46-2 ¶ 30. We are mindful of the tongue-in-cheek warning we give persons when they first retain lawyers to be careful with persons who bill you by the word when the client cannot control the number of words.

[139] ECF Doc. No. 46-1 at 15; ECF Doc. No. 46-2 ¶ 30.

[140] ECF Doc. No. 46-1 at 15–16.

[141] *Id.*

[142] ECF Doc. No. 47 at 17.

[143] *Id.* at 17–18.

[144] *Id.*

[145] ECF Doc. No. 46-4.

[146] ECF Doc. No. 46-5.

[147] ECF Doc. No. 46-2 ¶ 33; ECF Doc. No. 46-6 at 1–2.

[148] *See* ECF Doc. Nos. 46-14 ¶ 25 ("It is [Attorney Oberman's] opinion . . . the number of hours spent litigating the fee aspect of the matter, at the time of this filing, is also reasonable"); ECF Doc. No. 46-15 ¶ 24 ("[Attorney Young] also believe[s] that the number of hours spent litigating

the fee aspect of the matter to be reasonable"); *see also* ECF Doc. No. 46-12 ¶ 46 (Attorney Berney swears "the total number of hours spent on the federal action . . . is reasonable").

[149] ECF Doc. No. 47 at 8–9.

[150] *Id.*

[151] *Id.* at 9.

[152] *LeJeune*, 420 F. Supp. 3d at 342.

[153] *Joan P.B. v. Khepera Charter Sch.*, 420 F. Supp. 3d 347, 354–55 (E.D. Pa. 2019).

[154] *Id.* at 355.

[155] ECF Doc. No. 46-2 ¶ 20.

[156] ECF Doc. No. 46-6.

[157] We multiply the number of hours reasonably expended by a reasonable hourly rate to determine the lodestar. *Shane T. by & through Cathy K. v. Carbondale Area Sch. Dist.*, No. 16-964, 2021 WL 4478237, at *2 (M.D. Pa. Sept. 30, 2021) (citing *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001)).

[158] ECF Doc. No. 47 at 14–16.

[159] ECF Doc. No. 47-1 at 5.

[160] *Id.*

[161] ECF Doc. No. 46-1 at 13–14; ECF Doc. No. 48 at 9–10.

[162] *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 434-37).

[163] *Hensley*, 461 U.S. at 436.

[164] *LeJeune*, 420 F. Supp. 3d at 344 (quoting *Hensley*, 461 U.S. at 440).

[165] *I.W.*, 2016 WL 147148, at *20.

[166] *Shane T.*, 2021 WL 4478237, at *8 (internal citations omitted).

[167] *A.B. By & Through F.B. v. Pleasant Valley Sch. Dist.*, 839 F. App'x 665, 668 (3d Cir. 2020) (quoting *Mancini v. Northampton Cty.*, 836 F.3d 308, 321 (3d Cir. 2016)).

[168] *Shane T.*, 2021 WL 4478237, at *2 (citing *Hensley*, 461 U.S. at 436–37).

[169] *E.H.*, 2020 WL 6286709, at *12.

[170] *I.W.*, 2016 WL 147148, at *20.

[171] *Id.*

[172] *Id.*

[173] *Id.* (quoting *Fox v. Vice*, 563 U.S. 826 (2011)).

[174] *Id.* (internal citations omitted).

[175] *Rayna P. v. Campus Cmty. Sch.*, 390 F. Supp. 3d 556, 568 (D. Del. 2019).

[176] *Id.*

[177] *See, e.g., S.C. by K.G. v. Lincoln Cnty. Sch. Dist.*, 16 F.4th 587, 594 (9th Cir. 2021); *K.D. by & through Carrera v. Los Angeles Unified Sch. Dist.*, 816 F. App'x 222, 223 (9th Cir. 2020); *Schiff v. D.C.,* No. 18-1382, 2019 WL 5683903, at *6 (D.D.C. Nov. 1, 2019); *S.H. v. Rutherford Cnty. Sch.*, 334 F. Supp. 3d 868, 875 (M.D. Tenn. 2018); *Zachary v. Sch. Dist. No. 1 for the City & Cnty. of Denver*, No. 15-02399, 2016 WL 5815283, at *16 (D. Colo. Oct. 5, 2016); *T.W. v. Spencerport Cent. Sch. Dist.*, 891 F. Supp. 2d 438, 443 (W.D.N.Y. 2012); *K.C. ex rel. Her Parents v. Nazareth Area Sch. Dist.*, 806 F. Supp. 2d 806, 815 (E.D. Pa. 2011); *Aileen Y. v. Dep't of Educ., Hawaii*, No. 10-454, 2011 WL 3861411, at *1 (D. Haw. Aug. 4, 2011), *report and recommendation adopted sub nom. Aileen Y. v. Dep't of Educ.*, No. 10-454, 2011 WL 3861427 (D. Haw. Aug. 31, 2011); *J.S. ex rel. D.S. v. Lenape Reg'l High Sch. Dist. Bd. of Educ.*, 102 F. Supp. 2d 540, 540–41 (D.N.J. 2000).

[178] *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 244 (3d Cir. 2012) (quoting *P.P. ex rel. Michael P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009)).

[179] ECF Doc. No. 39.

[180] *I.W.*, 2016 WL 147148, at *20.

[181] ECF Doc. No. 46-1 at 16–17.

[182] *Id.*

[183] ECF Doc. No. 46. Dr. Henning's invoice dated October 3, 2022 reports a total invoice of $41,490.99. *See* ECF Doc. No. 46-1 at 18. Parents inexplicably seek $43,446.54 in expert fees and costs for the services of Dr. Henning. *See* ECF Doc. No. 46.

[184] ECF Doc. No. 47 at 10–11.

[185] *Id.* at 11–12.

[186] *Id.* at 12–14. The District argues, in the alternative, if we find any expert fees are recoverable, Parents should be awarded no more than $4,000. *See* ECF Doc. No. 47 at 14.

[187] ECF Doc. No. 48 at 8–9.

40

[188] *E.H.*, 2020 WL 6286709, at *12 (citing *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 300 (2006)).

[189] The Rehabilitation Act states: "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 . . . shall be available to any person aggrieved . . . under [Section 504]." 29 U.S.C. § 794a(a)(2). The Civil Rights Act expressly states we "in our discretion, may allow the prevailing party. . . a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k); *see also E.H.,* 2020 WL 6286709, at *12; *A.B. by & through F.B.*, 2019 WL 2715681, at *9 ("Hearing Officer concluded the District denied [student] [free appropriate public education] under both the IDEA and Section 504 of the Rehabilitation Act . . . [u]nder these circumstances, courts have held expert costs may be recovered under Section 504."); *Perkiomen Valley Sch. Dist. v. R.B.*, 533 F. Supp. 3d 233, 260 (E.D. Pa. 2021) ("[A]lthough expert fees are not recoverable under the IDEA . . . they are recoverable under § 504 of the Rehabilitation Act[.]").

[190] *E.H.*, 2020 WL 6286709, at *13.

[191] ECF Doc. No. 47 at 11.

[192] ECF Doc. No. 10-3 at 26–27.

[193] ECF Doc. No. 10-3.

[194] ECF Doc. No. 46-1 at 18.

[195] ECF Doc. No. 47 at 12–14.

[196] *E.C.*, 91 F. Supp. 3d at 615 (quoting *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 714 (3d Cir. 2005) (emphasis added).

[197] *Id.*

[198] *Id.* (quoting *Interfaith Cmty. Org.*, 426 F.3d at 714).

[199] *Id.*

[200] *Id.*

[201] ECF Doc. No. 46-1 at 11, 17.

[202] *Id*. at 17.

[203] ECF Doc. No. 10-11 at 450–612

[204] ECF Doc. No. 46-1 at 17–18.

[205] ECF Doc. No. 10-3 at 23. The District argues we should not award expert fees because Hearing Officer Skidmore "specifically discounted the import both of Dr. Henning's report and testimony in rendering her final decision." ECF Doc. No. 47 at 11. Hearing Officer Skidmore did discount

Dr. Henning's report, but still found her testimony "convincing." ECF Doc. No. 10-3 at 23.  We will not exclude Dr. Henning's expert fees based on this alone. The District also asks we strike the time Parents' counsel billed associating with Dr. Henning because her "failure to contribute to [Parents'] success." ECF Doc. No. 47 at 12. We again do not agree Dr. Henning failed to contribute to Parents' success given Hearing Officer Skidmore found her testimony "convincing" and "credible[.]" ECF Doc. No. 10-3 at 23. We will not deduct any time billed by Parents' counsel associating with Dr. Henning.

[206] ECF Doc. No. 46-11; ECF Doc. No. 46-2 ¶ 36.

[207] ECF Doc. No. 46-11.

[208] *Id.*

[209] *Id.*

[210] *Id.*

[211] ECF Doc. No. 47 at 13. The District acknowledges Parents "demand the [District] pay $765.99 for two nights' stay at a hotel and four meals for Dr. Henning." *Id.* But the District does not specifically object to the award of costs incurred by Dr. Henning. We will not decrease the fee award based on factors not raised by the District. *See M.M.,* 142 F. Supp. 3d at 413 ("Absent specific objections to the expert fees, and upon review of the exhibits supporting the expert fees appended to the Motion for Fees, the court will allow their reimbursement in the full amounts requested."); *see also E.C.,* 91 F. Supp. 3d at 615, n.16 (holding no decrease in an expert fee award is warranted based on factors not raised by the district).